**UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WANDA ROBINSON,

    Plaintiff,

vs.

AMERICAN HOME MORTGAGE
SERVICING, INC.,

    Defendant.

Case No. 1:11-cv-1087

Magistrate Judge Hugh W. Brenneman, Jr.

---

| | |
|---|---|
| Ragan Savara (P70354) | Mark J. Magyar (P75090) |
| **LEGAL AID OF WESTERN MICHIGAN** | **DYKEMA GOSSETT PLLC** |
| Attorneys for Plaintiff | Attorneys for Defendant American Home |
| 201 W. Kalamazoo, Rm. 427 | Mortgage Servicing, Inc. |
| Kalamazoo, MI 49007 | 300 Ottawa Avenue, N.W., Suite 700 |
| (269) 344-8113, Ext. 223 | Grand Rapids, MI 49503-2306 |
| rsavara@legalaidwestmich.net | (616) 776-7500 |
| | mmagyar@dykema.com |

---

### PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS – ORAL ARGUMENT REQUESTED

**INTRODUCTION**

    Ms. Robinson fell behind on her mortgage payments and entered into a permanent loan modification with her servicer, American Home Mortgage Servicing, Inc ("AHMSI"). After paying her modification payments for nearly a year, her servicer notified her about a minor error in her modification, specifically that the modification date was incorrect, and requested that she execute a new agreement. However, the letter sent to Ms. Robinson did not disclose significant changes to the material terms of the modification that rendered it unaffordable. Although she reached out to her servicer to resolve this matter, it eventually refused payments. Ms. Robinson

commenced this action in Kalamazoo Circuit Court and demanded a jury trial. Defendant later removed this matter to Federal Court.

**FACTS**

Plaintiff, Wanda Robinson, owns and lives in her home located at 1017 Hotop Ave., Kalamazoo, Michigan (hereinafter "the Property"). (Cmplt. ¶7). In 2005, she refinanced her home with an adjustable rate mortgage for $80,000.00, and executed a note evidencing a debt in that amount and mortgage granting a security interest in the Property. (Cmplt. ¶8). Defendant AHMSI has acted as servicer of Ms. Robinson's mortgage and note at all times relevant to this litigation. (Cmplt. ¶12).

AHMSI is a participant in the Homes Affordable Modification Program (hereinafter "HAMP"). (Cmplt. ¶15). On October 3, 2008, Congress passed the Emergency Economic Stabilization Act ("EESA"), 12 USC § 5201 et seq, which allocated $700 billion to the Treasury Department to restore liquidity and stability to the financial system, and preserve homeownership. (Cmplt. ¶34). Enabled by the authority granted in the EESA, the Treasury Department and other federal agencies created the Making Home Affordable Program on February 18, 2009, of which the Home Affordable Modification Program (the "HAMP") was part. (Cmplt. ¶35). The HAMP provides financial incentives to participating mortgage servicers to modify the terms of eligible loans for the benefit of homeowners. (Cmplt. ¶36). On April 6, 2009, the Treasury Department issued Supplemental Directive ("SD") 09-01, which provides additional guidance for participating servicers. (Available at https://www.hmpadmin.com/portal/programs/directives.html). (Cmplt. ¶37). Defendant AHMSI entered into a Servicer Participation Agreement ("SPA") with Fannie Mae (acting as an agent of the federal government) on July 10, 2009, in which AHMSI agreed to apply the Treasury Department's

HAMP criteria to all of the loans it services, including Plaintiff's. (Exhibit E attached to Complaint). (Cmplt. ¶38).

Ms. Robinson contacted her servicer multiple times requesting assistance because her mortgage payment was scheduled to increase due to an interest rate adjustment, however, the company was unresponsive. (Cmplt. ¶13). Eventually, due to financial hardship, she fell behind on her mortgage payments. (Cmplt. ¶14).

AHMSI offered a HAMP Trial Period Plan to Ms. Robinson requiring three monthly payments. (Exhibit A attached to Complaint). (Cmplt. ¶16-17). She took all of the steps necessary to accept the HAMP Trial Period Plan, including sending in all requested information to AHMSI and making the three required payments. (Cmplt. ¶18-19).

Following the completion of the Trial Period Plan, AHMSI informed Ms. Robinson that she was approved for a Permanent Modification through the HAMP program. (Exhibit B attached to Complaint (attached here as Exhibit A)). (Cmplt. ¶20). She took all of the steps necessary to accept the permanent HAMP Modification, including sending in all requested information to Defendant AHMSI and making the required payments. (Cmplt. ¶21).

The Modification Agreement modified the loan in the following ways:

    i. The new Maturity Date became January 1, 2036;

    ii. The new principal balance of the Note became $78,811.53;

    iii. The interest rate was reduced to 2 percent for the first five years of the modification, and then increased to a maximum interest rate of 4.78 percent; and

    iv. A balloon payment was added in the 26th year.

(Cmplt. ¶ 22). In the year following the execution of the agreement, Ms. Robinson made monthly

payments of $463.47 to AHMSI, as provided for in the Modification Agreement. (Cmplt. ¶ 23-24).

In early March 2011, Ms. Robinson received a package from AHMSI containing a cover letter and a second Modification Agreement. (Cmplt. ¶25). The letter stated that the first HAMP modification agreement did not comply with HAMP requirements and the reason checked is that the modification effective date was incorrect. (Exhibit C attached to complaint (attached here as Exhibit B)). (Cmplt. ¶26). The letter then states that they have re-processed the loan modification so it will be compliant. (Cmplt. ¶27). The letter states that terms of the loan modification changed but AHMSI failed to state a reason. (Cmplt. ¶28).

The second Modification Agreement (Exhibit D attached to Complaint (attached here as Exhibit C, pp. 2, §3)) then goes on to alter multiple provisions in the modification, including the following:

  i. The new principal balance of the Note became $82,608.55;
  ii. The interest rate would be increased to 3.475 percent for the first five years and then increase to the maximum rate of 5.125%; and
  iii. The beginning payment would increase to $572.36 instead of the $463.47 payments provided for in the original modification.

(Cmplt. ¶29). Ms. Robinson continued to make payments of $463.47 until AHMSI refused to accept payments in March of 2011. (Cmplt. ¶30). Following the refusal of her payment, Ms. Robinson contacted AHMSI concerning the payment refusal. (Cmplt. ¶31). However, she was unable to resolve the situation.

**STANDARD OF REVIEW**

In deciding a motion based on Rule 12(b)(6), a court accepts all non-conclusory allegations as true to determine whether there is a plausible claim for relief. *Buck v Thomas M. Cooley Law School*, 597 F3d 812, 816 (6th Cir. 2010). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566). "A plaintiff is not required to provide heightened fact pleading of specifics, but must allege facts sufficient to raise a right to relief above the speculative level." *Wienert v GMAC Mortg. Corp.*, No. 08-CV-14482, 2009 WL 3190420, at *4 (E.D. Mich. September 29, 2009) (internal quotations removed).

**ARGUMENT**

**I. PLAINTIFF'S CONTRACT CLAIM IS NOT BASED ON THE THEORY OF ENFORCEMENT OF HAMP GUIDELINES THROUGH THIRD PARTY BENEFICIARY THEORY**

Ms. Robinson commenced this action based on Defendant's failure to comply with the Permanent HAMP Modification Agreement – a contract between the two parties. Defendant seeks dismissal of the Breach of Contract claim because of the incorporation by reference of the HAMP Guidelines. (Defendant's Brief, pp. 6-8). To support its claim, Defendant provides authority citing no private cause of action under the HAMP guidelines based on third party beneficiary theory. However, Defendant's reliance on this authority is misplaced because Plaintiff is seeking to enforce a contract, the permanent modification agreement, entered into by the parties. Plaintiff is not seeking to enforce an agreement that she was not a party to, the HAMP guidelines, under the theory of third party beneficiary.

Defendant's argument is remarkable similar to one made before and rejected by the Western District of Michigan in *Darcy v. CitiFinancial, Inc.,* No. 1:10-cv-848 2011 WL 3758805 (W.D. Mich. Aug. 25, 2011) (J. Neff) (Attached as Exhibit D). In this case, the homeowner sued her mortgage servicer for failing to convert her trial period HAMP modification into a permanent modification. *Id* at 1. The defendant argued that plaintiff's state based claims for breach of contract and promissory estoppel were prohibited because there is no private cause of action under HAMP. *Id.* at 7-8. The Court rejected this argument, "without any acknowledgement that preemption is at issue, (the Defendants) suggest an implied preemption, arguing that Plaintiff's case is inexorably tied to interpretation of the HAMP guidelines. This is insufficient grounds for preemption." *Id.* [1]

Accordingly, Plaintiff has stated a claim for which relief can be granted and Defendant's Motion to Dismiss must be denied. If this Court finds that Plaintiff's pleading is insufficient because of the incorporation by reference, Plaintiff respectfully requests the opportunity to amend her pleadings to comply with the Court's decision.

## II. PLAINTIFF STATED A CLAIM FOR BREACH OF CONTRACT

Plaintiff entered into a valid enforceable contract. Defendant challenges the breach of contract claim on the grounds that the contact is void based on a clause in the permanent

---

[1] Multiple courts have found a private cause of action to enforce a HAMP modification agreement. *See, e.g.*, *Fletcher v. OneWest Bank*, 798 F. Supp. 2d 925, 931 (N.D. Ill. 2011) ("[W]ithout some explicit direction from Congress that it intended programs such as HAMP to have such preemptive force, the Court will not preclude [the plaintiff] from pursuing her basic state common law remedies."); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 350-51 (D. Mass. 2011) ("The fact that a TPP has a relationship to a federal statute and regulations does not require the dismissal of any state-law claims that arise under a TPP."); *Kennedy v. Wells Fargo Bank, N.A.*, No. CV 11-4635 DSF, 2011 WL 4526085, at *2 (C.D. Cal. Sept. 28, 2011) ("Plaintiff's contract claim is plainly not the same as a private attempt to enforce HAMP, because Defendant allegedly voluntarily entered into the contract with Plaintiff."); *Stagikas v. Saxon Mortg. Services, Inc.*, 795 F. Supp. 2d 129, 136 (D. Mass. 2011) ("The fact that the TPP is a form contract created by the government makes no difference."); *Bolone v. Wells Fargo Home Mortg.*, No. 11-10663, 2011 WL 3706600, at *5 (E.D. Mich. Aug. 24, 2011) (explaining that the lack of a private cause of action under HAMP did not affect the likelihood of success of a breach of contract claim because "Plaintiff is asserting that Wells Fargo breached the terms of the TPP by not permanently modifying her loan, rather than asserting that Wells Fargo Violated the HAMP guidelines.").

modification requiring Plaintiff to return a corrected modification upon notice of an error and that failure to do so voids the agreement. (Defendant's Brief, pp. 8-9 citing the modification agreement attached as Exhibit A, pp. 5, 4(k)). In support of its motion, Defendant relies on *Droppers v. Marshall*, 203 Mich. 173, 179 (Mich. 1918) and *Scott v. Bush,* 29 Mich. 523 (Mich. 1874). That in essence, a party seeking to enforce a void contract is not entitled to damages. *Id.* However, Defendant reliance on this authority is misplaced. Both *Droppers and Scott* stand for the proposition that a contract founded on acts in violation of the law are void ab intio. *See Droppers, Id.* at 179-180 (Mich. 1918) (Tenants by the entirety – wife must execute instrument or the instrument is a "mere nullity"); *Scott,* Id. at 525 (Verbal real estate agreement is void for failure to comply with the Statute of Frauds). The permanent modification is not void as a matter of law, indeed, there is a factual question as to breach of contract claim and what damages Plaintiff is entitled to.

Plaintiff pled a valid breach of contract claim and Defendant's motion to dismiss must be denied.

### III. PLAINTIFF STATED A CLAIM FOR EQUITABLE ESTOPPEL

Plaintiff brings an Equitable Estoppel claim, based on Defendant's attempt to conceal changes to the material terms of the modification without providing her proper notice. This claim is distinguishable from a Promissory Estoppel Claim.[2] Equitable Estoppel is a "doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way.

---

[2] In Michigan, a claim for promissory estoppel requires "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promise, and (3) that in fact produced reliance or forbearance of the nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Indus. Maxifreight Services v. Tenneco Auto. Operating Co.*, 182 F. Supp. 2d 630, 634 (W.D. Mich. 2002) (quoting *Novak v. Nationwide Mutual Ins. Co.*, 235 Mich. App. 675, 686–687, 599 N.W.2d 546 (1999)).

This doctrine is founded on principles of fraud. The five essential elements of this type of estoppel are that:

> (1) there was a false representation or concealment of material facts;
>
> (2) the representation was known to be false by the party making it or the party was negligent in not knowing its falsity;
>
> (3) it was believed to be true by the person to whom it was made;
>
> (4) the party making the representation intended that it be acted on or the person acting on it was justified in assuming this intent; and
>
> (5) the party asserting estoppel acted on the representation in a way that will result in substantial prejudice unless the claim of estoppel succeeds."

9 Mich. Civ. Jur. Estoppel § 2. In her Complaint, Plaintiff pled the following:

- The preceding paragraphs are incorporated by reference. (Cmplt. ¶47).

- In its letter, Defendant stated that the only difference between the first Modification Agreement and the second Modification Agreement was that the second reflected a change in the effective date. (Cmplt. ¶48).

- Defendant used the letter in an attempt to get Plaintiff to execute the second Modification Agreement and to destroy the first agreement. (Cmplt. ¶49).

- At the time that Defendant drafted and sent the letter, it knew or should have known that the statements in the letter were false. (Cmplt. ¶50).

- Defendant intended for Plaintiff to rely on the statements in the letter, so that Plaintiff would execute the second Modification Agreement without thoroughly reading the agreement. (Cmplt. ¶51).

- Because of Defendant's wrongful and misleading statements, Defendant should be estopped from denying that the first Modification Agreement is proper in all respects except for the modification effective date. (Cmplt. ¶52).

Defendant asserts that Plaintiff is prohibited from bringing a promissory estoppel claim because Plaintiff has pled, through incorporation, the existence of a valid contract. (Defendant's Brief, pp. 10). However, this argument is incorrect because Plaintiff pled an equitable estoppel claim, not a promissory estoppel claim. In the event that this Court finds that Plaintiff's pleading is insufficient because of the incorporation by reference, Plaintiff respectfully requests the opportunity to amend her pleadings to comply with the Court's decision. Plaintiff is permitted to state separate claims, regardless of consistency. Fed. R. Civ. P. 8(d)(2).

In the alternative, Defendant argues that this count should be dismissed based on the theory that the contract is void. However, Defendant fails to recognize the elements of an equitable estoppel claim. This claim is based on Defendant's conduct related to the notification of the change in the terms of the loan modification agreement. The letter sent to Defendant only disclosed that the modification effective date was changing. (Exhibit C attached to Complaint (attached here as Exhibit B)). However, the second Modification Agreement reflected significant changes to the material terms of the loan increasing the monthly payment, from $463.47 to $572.36, and interest rate, from 2% to 3.475%. (Exhibits B and D attached to complaint (attached here as Exhibits A and C, pp.2, §3)). While the contract is relevant, it should not be used to determine the validity of Plaintiff's equitable estoppel claim.

Furthermore, Defendant attempts to dispute the factual allegations in this matter. Specifically, that Plaintiff mischaracterizes the notice she received with the corrected modification. (Defendant's Brief, pp. 10, fn 4). It appears that Defendant is seeking a dismissal based on disputed facts. This is improper, as the factual determinations should be left to the jury.

Plaintiff pled a valid equitable estoppel claim and Defendant's motion to dismiss must be denied.

### IV. PLAINTIFF STATED A CLAIM FOR VIOLATION OF THE MICHIGAN MORTGAGE BROKERS, LENDERS, AND SERVICERS LICENSING ACT

Plaintiff also properly pleaded a claim for violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (hereinafter "the Act"). MCL 445.1651, *et seq*. Conduct prohibited by the act include engaging in fraud, deceit, and/or material misrepresentations in connection with its servicing of Plaintiffs' mortgage. MCL 445.1672. Defendant incorrectly argues that the pleading requirements for common law fraud and misrepresentation apply to Plaintiff's statutory claim.

Furthermore, Plaintiff incorporates all of the previous allegations related to Defendant's prohibited actions. (Cmplt. ¶ 62). This includes the facts and equitable estoppel claim outlined above. Plaintiff has identified the specific conduct that violated the act and has properly pled her claim. If this Court finds that Plaintiff's pleading is insufficient and that violations of the Act must be plead with particularity, Plaintiff respectfully requests the opportunity to amend her pleadings to comply with the Court's decision.

### CONCLUSION

For the reasons set forth above, Plaintiff requests this Court to deny Defendant's Motion to Dismiss in its entirety. Plaintiff should be permitted to proceed with her case based on the merits, not minor technicalities. In the event that the Court finds in Defendant's favor, Plaintiff respectfully requests the opportunity to amend her Complaint.

Dated: February 27, 2012  /s/ *Ragan Savara*
LEGAL AID OF WESTERN MICHIGAN
By: Ragan Savara (P70354)
Attorneys for Plaintiff

**CERTIFICATE OF SERVICES VIA ELECTRONIC FILING**

I hereby certify that on this 27th day of February 2012. I filed the foregoing response to Defendant's Motion to Dismiss electronically through the District Court's CM/ECF system, which case the following parties and counsel to be served by electronic means, as reflected on the Notice of Electronic Filing system:

      Mark John Magyar


/s/ *Ragan Savara*
LEGAL AID OF WESTERN MICHIGAN
By: Ragan Savara (P70354)
Attorney for Plaintiff