UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANDA ROBINSON,

                Plaintiff,

v.

AMERICAN HOME MORTGAGE
SERVICING, INC.,

                Defendant.

_____/

Case No. 1:11-cv-1087

Hon. Hugh W. Brenneman, Jr.

## OPINION

Plaintiff Wanda Robinson filed this multi-count action against defendant American Home Mortgage Servicing, Inc. (sometimes referred to as "AMHSI") seeking equitable relief in the form of specific performance of a contract.  This matter is now before the court on defendant's corrected motion to dismiss Counts I, II and IV pursuant to Fed. R. Civ. P. 12(b)(6) (docket no. 16).

### I.      Background

Plaintiff's complaint contains the following allegations relevant to Counts I, II and IV.  Plaintiff owns and resides at 1017 Hotop Ave., Kalamazoo, Michigan.  Compl. at ¶¶ 3 and 8. In 2005, she refinanced her home with an adjustable rate mortgage for $80,000.00, at which time she executed a note evidencing the debt and a mortgage granting a security interest in the property. *Id.* at ¶ 9.  Plaintiff  alleged that "[t]he mortgage states that the lender is Ameriquest Mortgage Company" and that "[a]n assignment of the mortgage to Deutsche Bank National Trust was recorded

on February 16, 2009." *Id.* at ¶ 10.[1]  Defendant has serviced plaintiff's mortgage and note at all times relevant to this litigation.  *Id.* at ¶ 12.

Plaintiff contacted defendant multiple times requesting assistance because her mortgage payment was scheduled to increase due to an interest rate adjustment.  *Id.* at ¶ 13. However, defendant was unresponsive.  *Id.*  Due to financial hardship, plaintiff fell behind on her mortgage payments.  *Id.* at ¶ 14.  Defendant is a participant in the Homes Affordable Modification Program ("HAMP") and offered plaintiff a HAMP Trial Period Plan.  *Id.* at ¶¶ 15-16; "Home Affordable Modification  Trial Period Plan (Step One of Two-Step Documentation Process)" (docket no. 1-1 at pp. 16-19).  Under the Trial Period Plan, plaintiff was expected to make three monthly payments of $587.28, due on November 1, 2009, December 1, 2009 and January 1, 2010. Compl. at ¶ 17; HAMP Trial Period Plan.  Plaintiff took all steps necessary to accept the HAMP Trial Period Plan, sending all requested information to defendant, and making the three required payments.  Compl. at ¶¶ 18-19.

After plaintiff completed the "Temporary Modification" [sic], defendant informed plaintiff that she was approved for a "Permanent Modification" through the HAMP program.  *Id.* at ¶ 20; "Home Affordable Modification Agreement (Step Two of Two-Step Documentation Process)" (sometimes referred to as the first Modification Agreement) (docket no. 1-1 at pp. 20-24). Plaintiff took all steps necessary to accept the first Modification Agreement sending all requested information to defendant.  Compl. at ¶ 21.  The first Modification Agreement modified plaintiff's

---

[1] The court notes that plaintiff did not attach a copy of the mortgage, note or assignment to her complaint.  However, defendant did include copies of the  mortgage (dated December 20, 2005) (docket no. 15-2 at pp. 1-21), promissory note (dated December 20, 2005) (docket no. 15-2 at pp. 23-25), and assignment of the mortgage and note to Deutsche Bank National Trust Company (January 15, 2009) (docket no. 15-2 at p. 27).

loan in the following manner: (1) the new maturity date became January 1, 2036; (2) the new principal balance on the note became $78,811.53; (3) the interest rate was reduced to 2% for the first five years of the modification and then increased to a maximum rate of 4.78 %; (4) a balloon payment was added in the 26th year. *Id.* at ¶ 22; first Modification Agreement at ¶ 3.

Plaintiff began making monthly payments of $463.47 to defendant pursuant to the first Modification Agreement and continued to make those payments for the next 12 months. *Id.* at ¶¶ 23-24. In March 2011, plaintiff received a package from defendant, which included a cover letter and a second Modification Agreement. *Id.* at ¶ 25. The March 10, 2011 cover letter stated that the first Modification Agreement did not comply with HAMP requirements *Id.* at ¶ 26; AHMSI letter (March 10, 2011) (docket no. 1-1 at pp. 25-26). The letter included six possible reasons for non-compliance:

> Your post-modification housing expense debt-to-income ratio (DTI) was greater than 31%[.]
>
> Your modified monthly mortgage payment was incorrectly calculated[.]
>
> The interest rate steps were incorrectly calculated[.]
>
> The modification effective date is incorrect[.]
>
> Your gross monthly income was calculated incorrectly[.]
>
> The Net Present Value (NPV) result contained errors or was negative[.]

AHMSI letter (March 10, 2011).

The reason for non-compliance identified in plaintiff's letter was that "the modification effective date was incorrect." *Id.* at ¶ 26; AHMSI letter (March 10, 2011). The letter also stated that defendant had re-processed the loan modification so it would be compliant and that the terms of the loan modification changed. Compl. at ¶¶ 27-28. *See* AHMSI Letter (March 10,

3

2011) ("Fortunately, we were able to re-process your loan modification so that your loan modification will be compliant").

The letter then stated:

One or more of the terms of your loan modification are changed in the Correction Agreement as follows:

Initial Monthly Principal And Interest Payment Amount

Estimate Monthly Escrow Payment Amount

Initial Interest Rate

Monthly Principal and Interest Payment Amount (as of Year 6 or later)

Interest Rate (as of Year 6 or later)

New Principal Balance (total amount capitalized adjusted)

Deferred Principal Balance (total amount deferred added or adjusted)

Maturity Date

AHMSI Letter (March 10, 2011). However, defendant's letter failed to identify which of the listed terms were changed in the "Correction Agreement," i.e., the "Home Affordable Modification Agreement (Step Two of Two-Step Documentation Process)" with an effective modification date of February 1, 2010 (sometimes referred to as the "second Modification Agreement"). Compl. at ¶ 28.

Plaintiff alleged that the second Modification Agreement altered multiple provisions in the modification, including: (1) the new principal balance of the note became $82,608.55; (2) the interest rate would be increased to 3.457% for the first five years and then increase to a maximum rate of 5.125%; (3) the beginning payment would increase to $572.36 instead of the $463.47

4

payments provided in the original modification. Comp. at ¶ 29; second Modification Agreement (docket no. 1-1 at pp. 27-30). Plaintiff continued to make payments of $463.47 until defendant refused to accept payments in March 2011. *Id.* at ¶ 30. Plaintiff contacted defendant concerning the payment refusal. *Id.* at ¶ 31. Then, in May 2011, plaintiff, through her counsel, sent a letter to defendant requesting it to adhere to the first Modification Agreement. *Id.* at ¶ 32. However, defendant never contacted counsel. *Id.* at ¶ 33.

Plaintiff also sets forth general allegations regarding the "Making Home Affordable Program," noting that defendant entered into a Servicer Participation Agreement (SPA) with Fannie Mae (acting as an agent of the federal government) on July 10, 2009, in which defendant "agreed to apply the Treasury Department's HAMP criteria to all of the loans it services, including Plaintiffs'." Compl. at ¶¶ 34-38; Defendant's SPA (docket no. 1-1 at pp. 31-59).

Plaintiff filed this action in the Kalamazoo County Circuit Court on August 23, 2011. Her state court complaint contained four counts: Count I (Breach of contract); Count II (Estoppel); Count III (Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*); and, Count IV (Violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (the "Licensing Act"), M.C.L. § 445.1651 *et seq.*). On October 11, 2011, defendant filed a notice of removal to federal court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, due to the alleged violation of the Equal Credit Opportunity Act in Count III. *See* Notice of Removal (docket no. 1).

5

## II.     Defendant's motion to dismiss

### A.     Legal Standard

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  A motion brought

pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon

which relief can be granted."  A complaint may be dismissed for failure to state a claim if it fails to

give the defendants a fair notice of the claim and the grounds upon which it rests.  *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 555 (2007).  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that

states a claim for relief must contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief").  A plaintiff's obligation to provide the grounds for his entitlement to

relief requires  "more than labels and conclusions."  *Id.*  Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a
> claim to relief that is plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The plausibility standard is
> not akin to a "probability requirement," but it asks for more than a sheer possibility
> that a defendant has acted unlawfully.  Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

### B.     HAMP violation

As an initial matter, defendant contends that plaintiff has no private right of action

under HAMP and no standing to enforce defendant's SPA, and that her allegations "should be

dismissed to the extent they rely upon HAMP or SPA."   Defendant's Brief at pp. 6-8.  In her

response, plaintiff points out that she is not seeking to enforce the HAMP guidelines nor does she

claim to be a third-party beneficiary to defendant's SPA.  Rather, she "is seeking to enforce a

contract, the permanent modification agreement, entered into by the parties."  Plaintiff's Response

at p. 5. Given that plaintiff has not alleged causes of action arising under HAMP or as a third-party beneficiary of the SPA, there is no basis to strike any allegation from the complaint. *Cf. Darcy v. CitiFinancial, Inc.*, No. 1:10-cv-848, 2011 WL. 2758805 at *4 (W.D. Mich. Aug. 25, 2011) (Neff, J.)(concluding that the plaintiff's state law breach of contract claim arising from a HAMP Trial Period Plan "is not preempted or otherwise precluded by HAMP").

### C.    Breach of Contract

Plaintiff sets forth the following allegations in support of her breach of contract claim. Plaintiff and defendant entered into a contract to modify the existing mortgage and loan, whereby plaintiff agreed to make payments pursuant to a temporary modification. Compl. at ¶ 40. Upon the successful completion of the temporary modification, defendant agreed to provide plaintiff with a permanent loan modification. *Id.* Plaintiff complied with defendant's document requests and made the necessary payments to successfully complete the temporary loan modification. *Id.* at ¶ 41. Defendant offered plaintiff a permanent modification when it sent the first Modification Agreement to her. *Id.* at ¶ 42. Plaintiff took all of the steps necessary to accept the first Modification Agreement and made payments pursuant to that agreement. *Id.* at ¶ 43. Then, "[d]efendant attempted to use the ruse of a single error" in the first Modification Agreement "to induce plaintiff into entering into a second, less favorable agreement." *Id.* at ¶ 44. Plaintiff alleged that defendant breached the contract "by failing to otherwise comply with the [first] Modification Agreement and by refusing to accept payments." *Id.* at ¶ 45. For her relief, plaintiff asks the court to enter judgment against defendants "to comply with its contractual obligations pursuant to [the] original Modification Agreement, and for money damages relating to the breach of contract." *Id.* at ¶ 46.

Defendant points out that the first Modification Agreement had an error, i.e., "that the 'Effective Date' was erroneously listed in the Modification Agreement as January 1, 2010 when it should have been February 1, 2010."  Defendant's Brief at p. 8.  Defendant also points out that the first Modification Agreement had a provision which allowed defendant to require plaintiff to correct subsequently discovered errors in the first Modification Agreement.  This provision appears in ¶ 4.K. of the first Modification Agreement as follows:

> 4.    Additional Agreements.  I agree to the following:  . . .
>
>    K.    That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

First Modification Agreement at ¶ 4.K.

Defendant contends that the first Modification Agreement became void under its own terms on March 10, 2011, when defendant notified plaintiff of the error in the effective date. Because the first Modification Agreement is now void, defendant cannot be liable for breaching a void contract.  Defendant cites *Droppers v. Marshall*, 203 Mich. 173, 179, 168 N.W. 1001 (1918) for the proposition that "there can be no breach of a void contract."  For purposes of that case, the court defined a "void contract" meant "a complete nullity, without qualification."  *Droppers*, 203

Mich. at 179. The court disagrees with defendant's characterization of the first Modification Agreement in this case as a "void contract" as described in *Droppers*.

*Black's Law Dictionary* defines a "void contract" as "[o]ne which never had any legal existence or effect, and such contract cannot in any manner have life breathed into it." *Black's Law Dictionary* (5th Ed. 1979) at  p. 1412.  Similarly, the Restatement (Second) of Contracts, in defining a "void contract," states:  "A promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor is often called a void contract.  .  . such a promise is not a contract at all; it is the 'promise' or 'agreement' that is void of legal effect".   *See* Restatement (2d) of Contracts  § 7, comment (a).  Contrary to defendant's characterization, the first Modification Agreement was not a "void" contract "which never had any legal existence or effect."  Neither party contends that the first Modification Agreement was invalid prior to plaintiff's receipt of the March 10, 2011 notice.  On the contrary, defendant submitted the March 10, 2011 notice under ¶ 4.K. of the first Modification Agreement.

Under these circumstances, it appears to the court that the first Modification Agreement was a "voidable contract," which is defined as a contract "where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance."  *See* Restatement (2d) of Contracts  § 7, Voidable Contracts.   Under ¶ 4.K. of the first Modification Agreement, plaintiff agreed to a procedure by which that Modification Agreement could voidable if she failed to execute documents to correct an error "detected after execution of [the first Modification] Agreement."  The gist of plaintiff's claim is that the only "error" detected by defendant was an incorrect modification effective date, and that defendant breached the contract by invoking the error

correction clause of ¶ 4.K. to not only correct the identified error, but to re-write the substantive terms of the Modification Agreement.  Defendant's use of ¶ 4.K. in the manner alleged by plaintiff appears to be beyond the scope of the plain language of that paragraph, in which plaintiff only agreed to "execute such other documents as may be <u>reasonably</u> necessary to . . . (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement." (emphasis added) *See English v. Blue Cross Blue Shield of Michigan*, 263 Mich. App. 449, 471, 688 N.W.2d 523 (2004) ("[w]e give contractual language its plain and ordinary meaning, avoiding technical and constrained constructions").  Plaintiff has stated a claim to relief that is plausible on its face,  *see  Iqbal*, 556 U.S. at 678, and should be given an opportunity to develop this claim. Accordingly, defendant's motion to dismiss will be denied as to Count I.

### D.    Estoppel

In Count II, plaintiff alleged that "[b]ecause of Defendant's wrongful and misleading statements, Defendant should be estopped from denying that the first Modification Agreement is proper in all respects except for the modification effective date" and asks the court "to enter Judgment estopping Defendant from attempting to enforce any modification agreement other than the first Modification Agreement, and from pursuing a modification that would alter the terms of the

first Modification Agreement other than the total principal amount." Compl. at ¶¶ 52-53.  Defendant construed this claim as one for promissory estoppel and moved to dismiss it "because Michigan 'courts do not allow the equitable action of promissory estoppel where the plaintiff includes the allegations of the existence of an express contract[.]'"  Defendant's Brief at p. 10, quoting  *Groeb Farms, Inc. v. Alfred L. Wolff, Inc.*, No. 08-cv-14624, 2009 WL 500816 at *7 (E.D. Mich.  Feb. 27,

2009).  In her response, plaintiff stated that she is bringing an equitable estoppel claim, "based on Defendant's attempt to conceal changes to the material terms of the modification without providing her proper notice."  Plaintiff's Response at p. 7.  Plaintiff points out that her equitable estoppel claim is distinguishable from a promissory estoppel claim.  *Id.*

        The court will construe Count II as a cause of action for equitable estoppel. "Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Van v. Zahorik*, 460 Mich. 320, 335, 597 N.W.2d 15 (1999).  Assuming that plaintiff has alleged sufficient facts to establish equitable estoppel, her claim fails.  "It is well established under Michigan law that equitable estoppel is not a cause of action unto itself; it is available only as a defense."  *Casey v. Auto Owners Insurance Company*, 273 Mich. App. 388, 399, 729 N.W.2d 277 (2006).  *See  Frederick v. Federal-Mogul Corporation*, 273 Mich. App. 334, 341, 733 N.W.2d 57 (2006) ("equitable estoppel can only preclude an opposing party from asserting or denying the existence of a particular fact; it cannot form the basis of an independent cause of action"); *Conagra, Inc. v. Farmers State Bank*,  237 Mich. App. 109, 140-41, 602 N.W.2d 390 (1999)  ("[e]quitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact"); *West American Insurance Company v. Meridian Mutual Insurance Company*, 230 Mich. App. 305, 309-10, 583 N.W.2d 548 (1998)  ("[e]quitable estoppel is not an independent cause of action, but rather a doctrine that may assist a party by preventing the opposing party from asserting or  denying the existence of a particular fact"); *Hoye v. Westfield Insurance Company*, 194 Mich. App. 696, 705,

487 N.W.2d 838 (1992) ("the major distinction between equitable estoppel and promissory estoppel is that equitable estoppel is available only as a defense, while promissory estoppel can be used as a cause of action for damages") (internal quotation marks omitted). Accordingly, defendant's motion to dismiss will be granted as to Count II.

### E. Violation of the Licensing Act

In Count IV, plaintiff alleged that defendant is licensed or registered as a mortgage servicer under the Licensing Act. Compl. at ¶ 64. *See* M.C.L. § 445.1651a(s) (defining a "Mortgage servicer" as "a person who, directly or indirectly, services or offers to service mortgage loans"). Plaintiff further alleged that defendant, as a licensee or registrant under the Licensing Act, violated the Act by: "[f]ailing to conduct their business in accordance with the Act and other laws" and "[e]ngaging in fraud, deceit, and/or material misrepresentations in connection with its servicing of Plaintiffs' mortgage." Compl. at ¶ 65. The alleged violations identified by plaintiff are codified at M.C.L. § 1672, which provides in pertinent part as follows:

> It is a violation of this act for a licensee or registrant to do any of the following:
>
> > (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.
> >
> > (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.

M.C.L. § 445.1672(a) and (b).

The court concludes that plaintiff has met her burden with respect to stating a claim that is plausible on its face as to both M.C.L. §§ 445.1672(a) and (b). With respect to § 1672(a), while plaintiff has not alleged a violation of the Licensing Act, she has alleged a violation of a federal statute (the Equal Credit Opportunity Act) as well as common law breach of contract. With

respect to § 1672(b), plaintiff has alleged sufficient facts which, if accepted as true, state a plausible claim for deceit or material misrepresentation with respect to the loan modification process. Accordingly, defendant's motion to dismiss will be denied as to Count IV.

### III.     Conclusion

For the reasons stated, defendant's motion to dismiss (docket no. 16) is **GRANTED** as to Count II and **DENIED** as to Counts I and IV.  An order consistent with this opinion shall be issued forthwith.


Dated:  September 27, 2012                          /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge

13